<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DEEPKARN SINGH BEDI, on behalf of himself and all others similarly situated,** *Plaintiffs*, v. **BMW OF NORTH AMERICA, LLC,** *Defendant.* | Civil Action No. 15-1898 OPINION |

This matter comes before the Court by way of Defendant BMW of North America, LLC's ("BMW") motion to dismiss Plaintiff Deepkarn Singh Bedi's ("Plaintiff") complaint. Dkt. No. 4. The Court grants in part and denies in part the motion.

**I.  BACKGROUND**

This case concerns BMW's alleged deceptive marketing of its single turbocharger engines as "TwinPower Turbo" engines, even though those engines apparently did not have twin turbochargers. Plaintiff Deepkarn Singh Bedi ("Plaintiff") is an individual who resides in Marin County, California. Compl. ¶ 16, Dkt. No. 1. Defendant BMW is a Delaware corporation with its principal place of business, North American headquarters, and a variety of other facilities located in New Jersey. <u>Id.</u> ¶ 17.

In December 2012, Plaintiff researched and test-drove a 2013 BMW 335is coupe and the 2013 BMW 335i coupe. <u>Id.</u> ¶ 84. He believed that both cars possessed twin turbocharger engines, based on BMW's sales and marketing materials, including printed brochures and its website which described the vehicles as "TwinPower Turbo." <u>Id.</u> ¶ 84. While at the dealership, Plaintiff saw that

1

the Monroney sticker advertised the car's "TwinPower Turbo" engine. Id. ¶ 85. The engine cover also bore the label "TwinPower Turbo." Id. Based on these representations, Plaintiff believed his 335i had twin turbo engines. Id. He decided to lease a 335i model from an authorized BMW dealership and took possession of his vehicle on January 13, 2013. Id. ¶ 85. If Plaintiff knew his vehicle had only one turbocharger, he would not have leased it at the price he agreed to pay. Id. ¶ 86. Plaintiff was in California during all relevant times. Id. ¶ 94.

BMW began using the marketing phrase "TwinPower Turbo" in 2009. Earlier, from 2006 to 2008 (model years 2007-2009), BMW manufactured actual twin turbo engines on its "N54" engine model. Id. ¶ 3. These engines were immensely popular and received accolades throughout the auto industry. Id. But BMW largely abandoned its N54 engine, replacing it with the N55, an engine with a single turbocharger. Id. ¶¶ 4-5. The N55 was cheaper, less powerful, and consequently less prestigious. Id. ¶ 5. Two automotive websites tested the N54 and N55 engines, and found the N54 to be significantly more powerful. Id. ¶¶ 21-22.

BMW then invented the term "TwinPower Turbo" to maintain the market prestige built by its twin-turbo engines. Id. ¶¶ 6, 47. "Twin Turbo" is a term known in the vehicle marketplace to refer to a vehicle that has two turbo engines. Id. ¶ 26. Both Cadillac and Maserati advertise their engines as "Twin Turbo," but all their engines so advertised actually contain twin turbo engines. Id. ¶¶ 27, 29. BMW's "TwinPower Turbo" phrase strongly suggests, by design, twin turbo engines, a well-known and powerful engine arrangement that is more valuable. Id. ¶ 2. This phrase originally described all turbocharged engines in BMW cars beginning with the model year 2010, including high-powered engines such as a twin turbocharged V-12. Id. ¶¶ 2, 71-73. Even now, the term is used interchangeably by BMW to describe both single and twin turbocharger engines. Id. ¶¶ 61-63, 75.

2

Engines with two turbochargers are measurably superior to comparable engines with only one. Twin turbo engines have a superior ratio of fuel consumption to power and spool up more smoothly and rapidly. Id. ¶¶ 3, 23-24. They are particularly coveted by car tuners who can extract substantially more power out of twin turbo engines than out of single turbo engines. Id. ¶ 25. Other top automotive brands use twin turbo engines almost exclusively. Id. ¶ 30. BMW itself touts the superiority of twin turbo engines. Id. ¶¶ 31, 40-41. Twin turbo engines command a price premium, varying from $5,370 to $17,495 on otherwise identical vehicle models. Id. ¶ 34-35. BMW itself charged a premium of $7,500 more for a twin turbocharged 2012 335is coupe than for a single turbocharged 2012 335icoupe. Id. ¶ 37.

BMW continued marketing its N20, N26, and B38 engines, all containing only one turbocharger, as "TwinPower Turbo." Id. ¶ 8. It used this term to mislead consumers into believing they were purchasing the double turbo engines that BMW used to sell. Id. ¶ 9. BMW describes the following single-turbo model year 2014 cars as "TwinPower Turbo": 228i, M235i, 320i, 328i, 335i, 428i, 435i, 528i, 535d, 535i, 640i, 740i, 740li, Z4 sDrive28i, Z4 sDrive35i, and Z4 sDrive35is. Id. ¶ 11. These engines do house twin "scrolls" within a single turbo engine, but these are markedly inferior to a twin turbo engine. Id. ¶ 43-46. Other vehicle manufacturers, including Kia and Hyundai, do not refer to turbo engines with twin scrolls as twins; they are simply turbo engines. Id. ¶ 46.

"TwinPower Turbo" was visibly affixed on top of the engine covers of all N55 vehicles. Id. ¶ 48. It was also presented to consumers on the BMW website, uniform vehicle sales brochures, Monroney stickers on BMW vehicles, and in written articles and advertisements. Id. ¶ 54. A variety of specific statements used "TwinPower Turbo" and other obtuse language to mislead consumers. Id. ¶¶ 55-58. It seems to have worked; several posters on a variety of online forums

3

discussing BMW vehicles believed that "TwinPower Turbo" referred to twin turbo engines.  Id. ¶ 78-83.

Plaintiff now seeks to bring a class action on behalf of himself and all persons who purchased, leased, and/or currently own or lease new or Certified Pre-Owned "TwinPower Turbo" BMW vehicles using a single turbo engine.  Id. ¶ 12.  That label was allegedly used on the following vehicle models: 2009-current F07 Gran Turismo sedan, and 535i GT; 2009-present F10 535i/xDrive sedan; 2010-2011 E90 335i sedan; 2010-2013 E92 335i coupe and convertible; 2010-current E25 X3 xDrive35i SAV; 2010-current E70 X5 xDrive35i SAV; 2010-current E82 135i; 2010-current E84 X1 xDrive35i SAV; 2012-present F13 640i/xDrive Coupe and F12 convertible; 2012-present F30 335i/xDrive sedan; 2012-present E71 X6 xDrive; 2012-present F21 M135i; 2012-present F01 740i/Li sedan; 2012-present E82/E88 135is coupe and convertible; and 2013-present F32 435i/xDrive coupe and convertible; 2011-present E84 X1 xDrive/sDrive20i; xDrive/sDrive28i SAV; 2011-present E89 Z4 sDrive20i; sDrive 28i; 2012-present F10 528i/xDrive sedan; 2012-present F20 125i/xDrive 2012-present F25 X3 xDrive20i; xDrive28i SAV; 2012-present F30 320i; 2012-present F10 520i; 2012-present F30 328i/xDrive sedan; and 2013-present F32 428i/sDrive coupe and convertible.  Id. ¶¶ 51-52.

Plaintiff brings claims under federal, New Jersey state, and California state law.  His federal cause of action is violation of the Magnuson-Moss Warranty Act (Count 2).  Under New Jersey law, Plaintiff alleges violations of the New Jersey Consumer Fraud Act ("CFA") (Count 1); breach of express warranty (Count 3); and unjust enrichment (Count 4).  In the alternative, Plaintiff brings claims under California law for violation of the California Consumers Legal Remedies Act (Count 5); unfair competition and unlawful practices in violation of California Business Professional Code

§17200 (Count 6); and false advertising (Count 7).  Defendant moves to dismiss the Complaint for various reasons.

## II.  LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id.  The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard: namely, "a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  The circumstances of the fraud must be stated with sufficient particularity to put a defendant on notice of the "precise misconduct with which [it is] charged."  Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

### III. ANALYSIS

#### A. Consumer Fraud Claims

Defendant argues that California law, not New Jersey law, should apply to the consumer fraud claims. Plaintiff replies that a conflict of law analysis is premature and New Jersey law applies regardless. The Court is persuaded that there is a conflict between the relevant consumer fraud statutes and that California law should apply.

A district court sitting in diversity must apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In New Jersey, courts have adopted a two-part "most significant relationship" test to determine which set of laws should apply. Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 699 (D.N.J. 2011). The court must first determine whether there is an actual conflict between the laws of interested states; if not, the forum state law applies. If there is a conflict, then the court must weigh the following factors to identify which state has the "most significant relationship" to the claim. Id.

There is a conflict between the laws of the states here. The New Jersey Consumer Fraud Act does not require a showing of reliance, while California's consumer protection laws do. See Feldman v. Mercedes-Benz USA, LLC, No. 2:11-CV-00984 WJM, 2012 WL 6596830, at *6 (D.N.J. Dec. 18, 2012); Montich v. Miele USA Inc., 849 F. Supp. 2d 439, 446 (D.N.J. 2012); Majdipour v. Jaguar Land Rover N. Am., LLC, 2013 WL 5574626 (D.N.J. Oct. 9, 2013).

Plaintiff argues that it is inappropriate to reach the conflict of law question at the pleading stage. But the cases Plaintiff cites for that proposition concern situations where facts relevant to the conflict of laws analysis were disputed. For example, in Prudential Ins. Co. of Am. v. Goldman, Sachs & Co., Judge Susan Wigenton declined to conduct a choice of law analysis at the pleading stage because it was premature. No. 12-6590, 2013 WL 1431680, at *5 (D.N.J. Apr. 9, 2013). However, the Prudential court did not indicate that choice of law is always premature at

the pleading stage. Rather it noted that "this Court will benefit from acquiring further details regarding—for instance—where the alleged misrepresentations were made, where the alleged misrepresentations were relied upon, Defendants' actions outside New York, Plaintiffs' actions outside New Jersey, and locations of meetings and/or transactions among the parties." Id.

Here, there is no dispute about the facts relevant to a choice of law analysis. Plaintiff observed the marketing, relied on it to lease his car, and uses his car in California. Defendant created and oversaw the marketing scheme in New Jersey. Plaintiff does not identify any disputed facts that would require the Court to delay its choice of law analysis. The Court, therefore, decides the conflict of law question now. See Montich v. Miele USA, Inc., 849 F. Supp. 2d 439, 447 (D.N.J. 2012) (conducting choice of law analysis where the Complaint provided all necessary facts); Cooper v. Samsung Elecs. Am., Inc., 374 Fed. Appx. 250, 255 (3d Cir. 2010) (rejecting Plaintiff's argument that choice of law determination was premature at motion to dismiss stage).

Where a fraud or misrepresentation claim is alleged, the Court first examines whether the "plaintiff's actions in reliance took place in the state where the false representations were made and received." Maniscalco, 709 F.3d at 207 (quoting Restatement (Second) of Conflict of Laws § 148). If so, the law of that state controls. Id. If not, then the Court must weigh the following factors:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicile, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Id.  Plaintiff's action in reliance—leasing his car—did not occur in the same location that the false representations were made and received.  The representations were allegedly made in New Jersey.  See, e.g., Feldman v. Mercedes-Benz USA, LLC, No. 2:11-CV-00984 WJM, 2012 WL 6596830, at *6 (D.N.J. Dec. 18, 2012) (finding representations were "made" at Defendant's headquarters, though received elsewhere).  They were received in California.  The Court therefore weighs the Restatement factors.

Both New Jersey and California have interests in this litigation.  For New Jersey's part, BMW has its headquarters, corporate offices, a training center, a parts distribution center, and a vehicle preparation center in New Jersey.  BMW's product quality division, customer and dealer relations division, national technical specialists, sales division, marketing division, and after-sales service division are all supervised by BMW personnel located in New Jersey.  BMW's warranty program is also created in New Jersey.

California, however, has the more tangible ties in this case.  Plaintiff is a California resident, he received the representations in California, he allegedly acted in reliance on the representations in California, his vehicle is located in California, and he is performing under the lease in California.

Courts in New Jersey have addressed similar circumstances, and generally hold that "the mere fact that a company is headquartered in New Jersey or 'that unlawful conduct emanated from New Jersey' will not supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship under Restatement § 148(2)."  Montich v. Miele USA, Inc., 849 F. Supp. 2d 439, 449 (D.N.J. 2012); see also Maniscalco v. Brother Int'l Corp., 793 F. Supp. 2d 696, 708 (D.N.J. 2011); Nikolin v. Samsung Elecs. Am., Inc., No. 10-1456, 2010 WL 4116997, at *3-4 (D.N.J. Oct. 18, 2010).  Montich addressed an almost

identical circumstance. California was where the plaintiff received the representation, relied on the representation, and where the tangible thing that is the subject of the transaction was located. New Jersey was where the company was headquartered, produced products, oversaw operations, and developed and sent out the relevant misrepresentations. On those facts, California had the most significant relationship. Id. at 448-49. The Third Circuit upheld a similar conclusion in Maniscalco v. Brother Int'l (USA) Corp. 709 F.3d 202, 208 (3d Cir. 2013) (holding that the defendant's headquarters are in New Jersey is not sufficient to impose New Jersey law).

Plaintiff has not identified anything linking this case to New Jersey other than the fact that Defendant is based there and its misrepresentations emanated from there. That is not enough where, as here, all other pertinent activities occurred in California. As such, California law applies to Plaintiff's consumer fraud claims.[1] The New Jersey CFA claim (Count 1) is therefore dismissed.

### B. Unjust Enrichment

#### 1. Choice of Law

Neither Defendant nor Plaintiff conduct a choice of law analysis for their unjust enrichment arguments. "Numerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state." Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 710-11 (D.N.J. 2011) (collecting cases). Because neither party identifies a conflict of law, the Court applies New Jersey law to the unjust enrichment claim.

#### 2. Analysis

---

[1] Plaintiff has also clarified that he is not seeking to pursue a nationwide class under California consumer protection law. Pls. Opp. Br. at 14 n. 4. The California consumer fraud count thus only applies to California class members.

Defendant argues that the claim for unjust enrichment may not proceed because Plaintiff and Defendant do not have a direct relationship, as required under New Jersey law. Plaintiff argues that a direct relationship is not required. The Court finds there must be a direct relationship to assert an unjust enrichment claim.[2]

To assert unjust enrichment, a party must allege facts sufficient plausibly to show "(1) that the defendant has received a benefit from the plaintiff; and (2) that the retention of the benefit by defendant is inequitable." Wanaque Borough Sewage Auth. v. Twp. of West Milford, 144 N.J. 564, 575 (1996). This cause of action sounds in contract, not tort, and so there must be a direct relationship between the parties. See Spera v. Samsung Elecs. Am., Inc., 2014 WL 1334256, at *8-9 (D.N.J. Apr. 2, 2014) (dismissing plaintiffs' unjust enrichment claims because they purchased washing machines from retailers, not directly through Samsung). "New Jersey does *not* recognize unjust enrichment as an independent tort cause of action." Majdipour v. Jaguar Land Rover N. Am., LLC, No. 12-07849, 2013 WL 5574626, at *24 (D.N.J. Oct. 9, 2013) (quoting Warma Witter Kreisler, Inc. v. Samsung Electronics Am., Inc., No. 08-5380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009)); see also Pappalardo v. Combat Sports, Inc., No. 11-1320, 2011 WL 6756949, at *12 (D.N.J. Dec.23, 2011) (dismissing unjust enrichment claim because it was "presented as a tort-based theory of recovery").[3]

---

[2] "Direct relationship" refers to the contract nature of the unjust enrichment cause of action, as distinct from a tort-based unjust enrichment action, which is generally not permitted in New Jersey.
[3] In Stewart v. Beam Glob. Spirits & Wine, Inc., 877 F. Supp. 2d 192 (D.N.J. 2012), the Court found that a direct relationship is not required because it would allow "Defendants [to] insulate themselves from liability on an unjust enrichment claim simply by asserting that retail sales . . . cut off any relationship between the consumers and the manufacturer." Id. at 200. However, there are many other more specific and more appropriate causes of action for tortious activity, such as fraudulent activity or defective sales. See Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 936-37 (3d Cir. 1999) ("In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)."). Plaintiff alleges some of

No such relationship has been alleged here, and Plaintiff does not argue to the contrary. Plaintiff purchased his vehicle from an authorized BMW retailer, not BMW itself. Compl. ¶ 85. He therefore has not stated a claim for unjust enrichment. Counts 4 is therefore dismissed.

### C. Breach of Express Warranty

Defendants argue that Plaintiff's breach of express warranty count must be "dismissed" because there cannot be a nationwide breach of warranty claim under New Jersey law since the "the UCC is *not* uniform." Defs.' Mot. to Dismiss at 14 (emphasis in original). The Court is not persuaded.

The parties do not dispute that the Complaint states a claim for breach of express warranty. Rather, Defendant's argument appears to be that different states have different elements to their express warranty laws. That may be a valid predominance challenge, as the case Defendant cites in support of its argument holds. Chin v. Chrysler Corp., 182 F.R.D. 448, 457 (D.N.J. 1998). But it does not relate to dismissing any count at this stage.

Defendant has also not adequately identified an actual conflict between specific states' express warranty laws sufficient to cause the Court to conduct a choice of law analysis on the express warranty count. Merely pointing out that some states' express warranty claims are not uniform is not a sufficient identification of actual conflicts. Defendant does not even identify which states' laws conflict. Defendant identifies no conflict between New Jersey and California express warranty law, and cites no cases finding such a conflict between those two states. Cf. Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 322 (D.N.J. 2014) (finding no conflict between New Jersey and California express warranty law concerning privity). Because Defendant has not

---

them here. The Court is therefore persuaded to follow the substantial majority of courts in this district. Unjust enrichment requires a direct relationship.

11

identified a specific conflict of law concerning the express warranty laws of specific states, the Court will not conduct a choice of law analysis on the breach of warranty claims at this stage.

### D. Magnuson-Moss Breach of Express Warranty

The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, provides that "a consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1).

Defendant argues that the MMWA claim must be dismissed because Plaintiff has not alleged that BMW's engines did not "meet a specified level of performance over a specified period of time." Plaintiff has, however, identified the term "TwinPower Turbo" as a warranty that the engine would have two turbochargers, which perform objectively and measurably better than the single turbocharger engine Plaintiff actually received. Compl. ¶¶ 20-25, 39-42, 47-83. In Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 325 (D.N.J. 2014), the Court decided that affixing the Energy Star label was sufficient to invoke an express warranty under the MMWA because there were specific benchmarks in the Energy Star program. Similarly, here Plaintiff alleges that two turbochargers perform objectively better than a single turbocharger engine.

Defendant argues that "Plaintiff's allegations of a collective consumer understanding are subjective and do not carry the same weight as the allegations in Dzielak." Defs.' Reply at 9. The Court will not dismiss this claim at this juncture. Plaintiff's allegations must be taken as true, and here Plaintiff alleges that "TwinPower Turbo" affirmed that there were two turbochargers, and consumers believed it. The Court cannot weigh evidence at this stage, and will not substitute its judgment for the allegations in the Complaint. As such, the Court declines to dismiss the MMWA count.

### E. Scope of the Class

Defendant argues that Plaintiff only has standing to represent those members of a class who purchased the actual vehicle model he leased: the 2013 BMW 335i coupe. The Court disagrees.

In this district, a class complaint generally may survive a motion to dismiss on products a lead plaintiff did not purchase, so long as: (1) the basis for each of the claims is the same, (2) the products are closely related, and (3) the defendants are the same. Eberhart v. LG Elecs. USA, Inc., No. CV 15-1761, 2015 WL 9581752, at *3 (D.N.J. Dec. 30, 2015); In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig., No. 12-03571, 2013 WL 6450701, at *4 (D.N.J. Dec. 9, 2013); Burke v. Weight Watchers Int'l, Inc., No. 12-6742, 2013 WL 5701489, at *3-4 (D.N.J. Oct. 17, 2013); Stewart v. Smart Balance, Inc., No. 11-6174, 2012 WL 4168584, at *16 (D.N.J. June 26, 2012).

The alleged misrepresentation in this case is identical across all BMW vehicles included in the class: the use of "TwinPower Turbo" to describe single turbocharger engines. The basis for the claims is thus the same. The products are also closely related, as they are all sold or leased BMW vehicles. For all products, the Defendant is BMW. Plaintiff thus has standing to represent class members across all BMW vehicles with single turbocharger engines identified as "TwinPower Turbo." The Court therefore declines to dismiss Plaintiff's class claims against BMW model lines he did not buy.

## IV. CONCLUSION

For the reasons stated above, the motion is granted in part and denied in part. An appropriate order accompanies this opinion.

Date: January 27, 2016   /s/ *Madeline Cox Arleo*
  **Hon. Madeline Cox Arleo**
  **UNITED STATES DISTRICT JUDGE**